United States Courts
Southern District of Texas
FILED

*June 11, 2026*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:25-cr-404-3** |
| | § | |
| **JOHN MONTGOMERY** | § | |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through John G.E. Marck, Acting United States Attorney for the Southern District of Texas, Nathan H. Stopper, Special Assistant United States Attorney, and Liesel Roscher, Assistant United States Attorney and the defendant, John Montgomery, ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.      Defendant agrees to plead guilty to Count One of the Information and to persist with that plea of guilty through sentencing. Count One charges Defendant with aiding or abetting a violation of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1319(c)(4) and 18 U.S.C. § 2; specifically, aiding and abetting others known and unknown, to knowingly make

false material statements, representations, or certifications in records, reports, or other documents filed or required to be maintained under the CWA. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the information, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The statutory maximum penalty for each violation of Title 33, United States Code, Section 1319(c)(4), is imprisonment of not more than 2 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than 1 year. *See* Title 18, United States Code, Sections 3559(a)(5) and 3583(b)(3). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 1 year, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(5) and 3583(e)(3). Defendant understands that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

2

## Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

3

## Cooperation

5.    Should the Defendant seek to provide substantial assistance to authorities, as contemplated by Section 5K1.1 of the United States Sentencing Guidelines, the Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a § 5K1.1 motion. In seeking such a motion, the Defendant agrees to fully cooperate with the United States. The Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.    The Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive

4

his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in his/her possession or under his control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7.    Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not

5

waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received

from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.　Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

11.　The United States agrees to each of the following:

(a)　If Defendant pleads guilty to Count One of the Information and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the information/indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

7

(b)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

12.    The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment and/or information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

13.    The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)    to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation

8

Office in connection with that office's preparation of a presentence report;

(b)  to set forth or dispute sentencing factors or facts material to sentencing;

(c)  to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)  to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)  to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14.  Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing

judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.    Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.    The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.    Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.    In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.    If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.    However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

16.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

(a)     Defendant John Montgomery ("MONTGOMERY") was a Compliance Coordinator for Company A (as referenced in the Information) from approximately 2007 until he was terminated in 2024. MONTGOMERY held "A[n]" operator licenses from the Texas Commission on Environmental Quality ("TCEQ") for drinking water and wastewater operations. As Compliance Coordinator, MONTGOMERY worked with more than two dozen local water boards in an administrative and coordination capacity, including communication with boards, operators, and laboratories.

(b)     Defendant Derek McCoy ("MCCOY") worked at North Water District Laboratory Services, Inc. ("NWDLS") for 30 years, most recently as Chief Executive Officer. He was also a part owner of NWDLS.

(c)     Defendant Deena Higginbotham ("HIGGINBOTHAM") was the Director of Client Services at NWDLS from April 2022 until May 2025 and was previously a Project Manager for the company from July 2012 until April 2022.

(d)     NWDLS was a business in Conroe, Texas, that provided laboratory analysis, including wastewater testing, for engineering firms, municipalities, school districts, government agencies, industrial facilities, and individuals in the Greater Houston area.

(e)     Company A was a business in Cypress, Texas, that provided water utility operation services to municipal utility boards and wastewater treatment facilities, including discharge quality assurance and quality control (QA/QC).

11

(f)    NWDLS provided treated wastewater sampling and testing services to wastewater treatment facilities ("WWTFs"). Tests results were automatically captured into NWDLS's electronic laboratory information management system and then reviewed for accuracy by employees of NWDLS. The laboratory information management system would also automatically generate an "exceedance report" when discharge test results exceeded certain pollutant concentration limits in a WWTF's permit. NWDLS would then provide discharge test results and exceedance reports to clients, including Company A, who would review and note any issues. Clients, including Company A, would then file certain information with TCEQ and the United States Environmental Protection Agency ("EPA") and maintain other data, as required by the CWA and the TCEQ permits.  MONTGOMERY's role in this process was to receive, review, and communicate testing information for reporting and compliance purposes, and did not include control over laboratory testing, laboratory data systems, or how any subsequent changes to those results were made or implemented.

(g)    On June 26, 2024, agents from the EPA Criminal Investigation Division, the EPA Office of Inspector General, and the TCEQ interviewed the co-owner of Company A. He stated that NWDLS served as Company A's exclusive laboratory for sampling and testing treated and discharged wastewater for approximately 22 years until Company A terminated the relationship on or about June 1, 2024. The co-owner further stated that Company A and its clients collectively paid approximately $1.5 million annually to NWDLS for these services, that MONTGOMERY was one of Company A's employees primarily responsible for communicating with NWDLS, and that MONTGOMERY told the co-owner that he knew data was being manipulated but didn't know about the backdoor.

(h)    TCEQ Criminal Investigator Gabrielle Mayworn ("Investigator Mayworn") and EPA agents reviewed a March 19, 2021, email from MCCOY to HIGGINBOTHAM that included an electronic hyperlink for accessing a "backdoor" to NWDLS's Laboratory Information Management System software that allowed users to alter wastewater test results without creating a standard audit trail.

(i)    Investigator Mayworn and EPA agents reviewed documents from the EPA's Enforcement and Compliance Online website, the TCEQ NetDMR

12

website used by holders of TCEQ wastewater discharge permits to submit discharge reports, NWDLS's Laboratory Information Management System, and a risk management software called "Ekran" that regularly captured and saved images of the screen visible on most computers at NWDLS. From the review of this evidence, Investigator Mayworn and EPA agents identified that from February 9, 2021, until February 14, 2024, MCCOY and HIGGINBOTHAM falsified at least 36 test results from WWTFs serviced by Company A and caused these false results to be included in reports required by the CWA to be filed with the TCEQ or maintained by the WWTFs. MCCOY and HIGGINBOTHAM made these falsifications using the "backdoor" to NWDLS's Laboratory Information Management System and therefore did not leave an audit trail.

(j)     Investigator Mayworn and EPA agents reviewed numerous text messages between MONTGOMERY and MCCOY on multiple occasions, including an April 20, 2021, text message from MONTGOMERY to MCCOY alerting MCCOY that the discharge monitoring report was due at midnight so MCCOY would change the report to comply with permit limitations. Specifically, the text exchange included:

> MCCOY: "Having a problem getting access to what I need so we have to reboot the servers tonight."
> MONTGOMERY: "Any way tonight DMR due mid tonight Engineers watching close"
> MCCOY: "Let me see what I can do"
> MONTGOMERY: "K Txs"
> MCCOY: "Emailed – subject line THIS ONE" (note of explanation: *McCoy subsequently sent Montgomery an email with the subject line "THIS ONE[.]" That email attached an updated draft of the "results of analyses for samples" that falsely listed a Comal County WWTP's March 18, 2021, total phosphorus result as compliant with its permit limitations.*
> MONTGOMERY: "K/ Thanks"

As stated above, MCCOY responded by text message stating, "Let me see what I can do." Agents also reviewed documents and an email from MCCOY to MONTGOMERY showing that around the same time, MCCOY lowered the phosphorous concentration in the test results from the Comal County WWTF and caused materially false information to be included in a report filed

13

under the CWA. MONTGOMERY acknowledges that his conduct in communicating exceedances under these circumstances was wrongful.

(k)     Investigator Mayworn and EPA agents also reviewed a September 1, 2022, text message from MONTGOMERY to MCCOY that stated, "E. coli exceedances of 2420[.]" The message also listed three Harris County WWTFs serviced by Company A and an unknown WWTF and the dates samples of treated wastewater were collected from each of the WWTFs with *E. coli* concentrations exceeding 2420 "Most Probable Number" / 100mL. Agents also reviewed additional documents showing that on or about September 7, 2022, HIGGINBOTHAM knowingly lowered the *E. coli* concentrations in the test results from the three Harris County WWTFs identified in MONTGOMERY's text message and caused such materially false information to be included in reports filed under the CWA. MONTGOMERY acknowledges that he communicated exceedance information in these instances but did not himself alter the data or control the laboratory systems used to make such changes.

(l)     Under section 301(a) of the CWA, 33 U.S.C. § 1311(a), the discharge of a pollutant into waters of the United States from a point source is only lawful if done in compliance with an appropriate permit. Permits for the discharge of treated wastewater, such as the ones at issue in this investigation, are granted under the EPA's National Pollutant Discharge Elimination System or an equivalent state program in a state authorized by the EPA. 33 U.S.C. § 1342(b). The State of Texas is so authorized and the TCEQ issues such permits under the Texas Pollutant Discharge Elimination System. The United States retains enforcement authority for violations of the CWA and TCEQ permits in Texas.

(m)     The TCEQ grants permits to wastewater treatment facilities that allow for the discharge of treated wastewater from a WWTF to a receiving body of water. These permits impose limits on the concentrations of certain pollutants, including ammonia, *E. coli*, and phosphorus, that may be discharged and require the regular testing of effluent samples to monitor discharge compliance. The CWA and the TCEQ permits require that the results of this testing be filed with TCEQ and the EPA. Additional information, including the specific oxygen uptake rate of sludge accumulated at a WWTF, must be

14

retained by certain facilities for a period of years.

### Breach of Plea Agreement

17.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

18.   Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19.   Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all

steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

20. As part of this plea agreement, Defendant agrees to the following:

(a)    to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b)    to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c)    that Defendant obtained $0.00 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Court will determine the proper amount of a money judgment;

(d)    that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e)    to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

16

## Financial Statement

21.   Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

22. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

23.   This written plea agreement, consisting of 21 pages, including both the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other

17

than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on ___June 11___, 2026.

_____
JOHN MONTGOMERY
Defendant

Subscribed and sworn to before me on ___June 11___, 2026.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

18

APPROVED:

John G.E. Marck
Acting United States Attorney

By: _____

NATHAN H. STOPPER
Special Assistant United States Attorney

LIESEL L. ROSCHER
Assistant United States Attorney
Southern District of Texas

ERIN EPLEY
Attorney for Defendant

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:25-cr-404-3 |
| | § | |
| JOHN MONTGOMERY | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement

20

with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.


_____     _____
Attorney for Defendant                               Date


I have consulted with my attorney and fully understand all my rights with respect to the information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.


_____     _____
Defendant                                                  Date


21